*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEVON LEVI BREECE,

        Defendant-Appellant.

UNPUBLISHED
February 11, 2025
12:15 PM

No. 368496
Midland Circuit Court
LC No. 22-009130-FC

Before: BORRELLO, P.J., and REDFORD and PATEL, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), (2)(b), and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a), (2)(b). Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve concurrent terms of 25 to 70 years' imprisonment for each conviction of CSC-I and 62 months to 15 years' imprisonment for the conviction of CSC-II. For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

Defendant's convictions arise from his assault of his daughter, AY, between 2019 and 2020. AY was between the ages of six and seven when the offenses occurred. When AY was eight years old, she disclosed to her great-aunt that defendant had engaged in sex with her. AY was 10 years old at the time of trial. She testified that defendant penetrated her with his penis both vaginally and anally on more than one occasion. She also testified that defendant rubbed his penis near her vagina and buttocks, touched her vagina and buttocks with his hands, and put his mouth on her vagina.

Defendant was charged with three counts of CSC-I under MCL 750.520b(1)(a) and (2)(b): count one involved the act of cunnilingus, count two involved the act of vaginal penetration with penis, and count three involved the act of anal penetration. He was also charged with one count of CSC-II under MCL 750.520c(1)(a) and (2)(b) for sexual contact. Defendant was convicted and sentenced as described. This appeal followed.

-1-

## II. ADMISSION OF EVIDENCE

Defendant argues that he was denied his right to due process and a fair trial when the prosecution elicited testimony about his credibility, and the trial court allowed the admission of a piece of paper on which he drew a line on an honesty scale during his interrogation. We find the defendant's drawing on the honesty scale was admissible as an admission of a party-opponent. However, we agree that the detective's testimony following the honesty-scale evidence was erroneous, but we conclude that the error was not outcome-determinative.

Generally, "[a] trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls outside the range of principled outcomes." *People v Thorpe*, 504 Mich 230, 251-252; 934 NW2d 693 (2019) (cleaned up). Questions of law, such as if a rule of evidence or statute precludes admission of the evidence, are reviewed de novo. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010).

Although defendant objected to the admission of the piece of paper on which he drew a line, he did not object to questions posed to the detective or the detective's responses. "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *Thorpe*, 504 Mich at 252; see also MRE 103(a)(1). Because defendant failed to object to the prosecutor's line of questioning and the detective's responses, his challenge to the detective's testimony is unpreserved.

We review unpreserved claims of error for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To obtain relief under plain-error review, a defendant must show that an error occurred, that it was clear or obvious, and that it was prejudicial, i.e., that it affected the outcome of the lower court proceedings. *Id*. at 763. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (cleaned up).

At trial, the prosecutor elicited the following testimony from the investigating detective:

*Q*. And then, during your interview did you ask [defendant] to evaluate how honest he was being with you?

*A*. Yes. A lot of times during interviews if I'm talking to someone and [I] feel like I'm getting to just an impasse with them, you know, we're just arguing the same point back and forth and not getting anywhere, one of the tools I like to do is I take a piece of paper out and I just put zero percent honest and a hundred percent honest. And I say, "I know you're not being a hundred percent with me, but I know you're not being zero percent honest with me. Can you draw a line on this piece of paper as far as how honest you're being with me about the topic that we're sitting here talking about?" I do this—I used this tool with [defendant] and he put a line, I do believe it was approximately 75 maybe 80 percent honest on that—on that paper.

He drew a line on his own fruition. I didn't tell him where to draw the line. I didn't promise him anything. I didn't ask him . . . are you sure? Like I—I just

drew a zero percent honest and a hundred percent honest and asked, "Put a line on here about how honest you're being in talking with me today as we're sitting here." Just like you are sitting here talking with me today. And, he drew a line at approximately 75 or 80 percent.

Up until this point, we do not find error. The prosecutor then asked:

*Q*. Did that seem unusual to you in your experience?

*A*. Yes. It seems very unusual in my experience. A lot of times when I'm sitting, talking to *someone who is being honest with me*, they'll put it anywhere from like that 95 to 100 percent. A lot of times if you get someone putting it at like 95 range, it's because they're trying to think of any small details they might be missing.

It's unusual for an *honest* person to put the line back at the 75 to 80 percent mark, because that's big chunk of information that they're not willing to discuss with me. It makes me wonder . . . what it is that they're not willing to talk about with me on that topic. . . . [Emphasis added.]

We find this question and answer improper and erroneous. However, defendant did not object to the questions posed to the detective or the detective's responses.

Defendant asserts that the trial was a credibility contest based solely on AY's testimony. He maintains that his character for truthfulness was not put at issue and thus the detective's testimony and the paper on which defendant drew a line were inadmissible.

Defendant's placement of the line on the piece of paper was an indication of how honest defendant *himself* felt that he was being in his discussion with the detective. This was an admission of a party-opponent and thus the piece of paper was admissible under MRE 801(d)(2). At the time of defendant's trial, MRE 801(d)[1] provided, in pertinent part:

**Statements Which Are Not Hearsay**. A statement is not hearsay if—

* * *

(2) *Admission by Party-Opponent*. The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity . . . .

It was the jury's prerogative to determine what weight to give to this party-opponent admission. *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) ("It is for the trier of fact . . . to determine what inferences may be fairly drawn from the evidence and to determine the weight to

---

[1] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxiii (2023). We rely on the version of the Michigan Rules of Evidence that was in effect at the time of trial.

be accorded those inferences.") (cleaned up). Accordingly, the trial court did not err by admitting this exhibit.

However, "[a] witness may not comment on or vouch for the credibility of another witness." *People v Lowrey*, 342 Mich App 99, 109; 993 NW2d 693 (2022). Furthermore, "[a] witness may not opine about the defendant's guilt or innocence in a criminal case." *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012). "Such conduct invades the province of the jury to determine issues in a case." *Lowrey*, 342 Mich App at 109 (cleaned up). Although "a police officer may testify about his or her perceptions during the course of an investigation of whether a defendant was being truthful[,]" *id*, the detective's testimony was not limited to his perceptions. The prosecution also elicited the detective's opinion regarding the unusualness of where the defendant placed the line on the honesty scale. By comparing defendant's actions to those of "someone who is being honest," the detective implied that defendant was not an honest person. This testimony invaded the province of the jury. See *Lowrey*, 342 Mich App at 109.[2] The prosecution erred by asking the detective to comment on the unusualness of defendant's conduct, and the trial court erred by admitting the detective's opinion that defendant's conduct indicated deception. But defendant has not established outcome-determinative prejudice. See *Carines*, 460 Mich at 763-764. Considering all of the evidence and testimony admitted at trial without the detective's comment on the "unusualness" of defendant's self-assessment of honesty, we are not convinced that the result would have been different. As discussed below, there was substantial evidence of defendant's guilt. Although plain error occurred, it did not affect the outcome of the proceedings and reversal is not warranted.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant further argues that there was insufficient evidence to support his convictions. We disagree.

"Challenges to the sufficiency of the evidence are reviewed de novo." *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). "In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020). "[A] reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Oros*, 502 Mich at 239 (cleaned up). "It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn

---

[2] Defendant's reliance on MRE 608(a) is misplaced. Defendant argues that his character for truthfulness had not been attacked and thus any testimony regarding his truthfulness was inadmissible under MRE 608(a). Indeed, a party may present evidence of a witness's *truthful* character "only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise." *Id*. But the detective's testimony was not offered to *support* defendant's "truthful character." See, e.g., *People v Lukity*, 460 Mich 484, 489; 596 NW2d 607 (1999) ("Where a defense counsel attacks a witness' character for truthfulness in an opening statement, the prosecution may present evidence that *supports* the witness' character for truthfulness on direct examination.") (Emphasis added).

from the evidence and to determine the weight to be accorded those inferences." *Id*. (cleaned up). Any and all conflicts that arise in the evidence must be resolved "in favor of the prosecution." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018).

There is sufficient evidence for a guilty verdict when "a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). "The prosecution need not negate every reasonable theory of innocence; instead, it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *Mikulen*, 324 Mich App at 20. "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016).

Defendant was charged with CSC-I under MCL 750.520b(1)(a) and (2)(b), which provide that an offender is guilty of CSC-I if he or she sexually penetrated another person, that person was less than 13 years old, and the offender is 17 years old or older. MCL 750.520a(r) defines "sexual penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body . . . into the genital or anal openings of another person's body . . . ."

It is undisputed that AY was under the age of 13 at the time of the offenses and defendant was older than 17. The evidence offered at trial was sufficient to prove that defendant sexually penetrated AY. AY testified that defendant placed his penis inside her vagina "[m]ore than once." AY further testified that defendant touched her buttocks with his penis "[m]ore than once" and "sometimes it would go in; sometimes it would not." AY also testified that defendant put his mouth on her vagina. AY testified that the sexual abuse occurred during the time period that she lived with defendant. "The testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g." MCL 750.520h. Therefore, the jury could find defendant guilty of CSC-I based solely on AY's testimony. See *People v Solloway*, 316 Mich App 174, 181; 891 NW2d 255 (2016) ("In criminal sexual conduct cases, a victim's testimony may be sufficient to support a defendant's conviction and need not be corroborated.").

Defendant was also charged with CSC-II under MCL 750.520c(1)(a) and (2)(b), which provide that an offender is guilty of CSC-II if he or she engages in sexual contact with a person under 13 years of age and the offender is 17 years old or older. " 'Sexual contact' includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose." MCL 750.520a(q). AY testified that sometimes defendant rubbed his penis near her vagina and buttocks. AY also testified that defendant used his hands to touch her buttocks and vagina. There was sufficient evidence produced at trial for the jury to find defendant guilty beyond a reasonable doubt of CSC-II.

Defendant argues that AY's testimony was not credible; however, this was a determination for the jury. See *Solloway,* 316 Mich App at 182 ("[W]itness credibility is a question for the fact-finder, and this Court does not interfere with the fact-finder's role."). There was sufficient evidence to enable the jury to find beyond a reasonable doubt that defendant was guilty of the crimes charged. We will not disturb that determination.

## IV. PREARREST DELAY

Defendant argues in his Standard 4 brief that his due-process rights were violated because of a prearrest delay of over five years. We disagree.

Defendant did not raise the issue of prearrest delay in the trial court and thus it is unpreserved. See *Heft*, 299 Mich App at 78 ("A defendant must raise an issue in the trial court to preserve it for [appellate] review."). We review this unpreserved claim of error for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

"The Due Process Clause plays a limited role in preventing unjustified preindictment or prearrest delay." *People v White*, 208 Mich App 126, 134; 527 NW2d 34 (1994), citing *United States v Marion*, 404 US 307, 324-326; 92 S Ct 455; 30 L Ed 2d 468 (1971). "There is no constitutional right to be arrested," and a delay between committing an offense and an arrest is not generally a violation of a defendant's due-process rights. *People v Patton*, 285 Mich App 229, 236; 775 NW2d 610 (2009). To merit dismissal of a charge, a prearrest delay must have resulted in actual and substantial prejudice to the defendant's right to a fair trial and the prosecution must have intended a tactical advantage. *Id*. at 237. "Michigan applies a balancing test to determine whether a delay violates a defendant's constitutional right to due process of law." *People v Scott*, 324 Mich App 459; 924 NW2d 252 (2018). The defendant bears the burden of coming forward with evidence of prejudice resulting from the delay. *People v Cain*, 238 Mich App 95, 108; 605 NW2d 28 (1999). The prosecution then bears the burden of persuading the court that the reason for the delay was sufficient to justify whatever prejudice resulted. *Patton*, 285 Mich App at 237.

To be substantial, the prejudice to the defendant must have meaningfully impaired his or her ability to defend against the charges such that the outcome of the proceedings was likely affected. *Id*. "Actual prejudice cannot be shown by mere speculation; that is, '[a] defendant cannot merely speculate generally that any delay resulted in lost memories, witnesses, and evidence, even if the delay was an especially long one.' " *Scott*, 324 Mich App at 463, quoting *People v Woolfolk*, 304 Mich App 450, 454; 848 NW2d 169 (2014).

Defendant fails to present any argument concerning specific prejudice from the delay from offense to arrest and thus he has failed to establish plain error because of the prearrest delay.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues in his Standard 4 brief that his trial counsel was ineffective for several reasons. We disagree.

An ineffective-assistance-of-counsel claim presents a "mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). Generally, we review de novo constitutional questions, while we review the trial court's findings of fact for clear error. *Id*. To preserve a claim of ineffective assistance of counsel, a defendant must raise the issue in a motion for a new trial or a *Ginther*[3] evidentiary hearing filed in the trial court, *Heft*, 299 Mich

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

App at 80, or in a motion to remand for a *Ginther* hearing filed in this Court, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant did none of these things and thus our review of this unpreserved issue is limited to errors apparent on the record. *Abcumby-Blair*, 335 Mich App at 227.

The United States and Michigan Constitutions afford criminal defendants the right to effective assistance of counsel. *Yeager*, 511 Mich at 488, citing Const 1963, art 1, § 20; US Const Am VI; *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To prevail on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different." *Yeager*, 511 Mich at 488 (cleaned up). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (cleaned up). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (cleaned up). We will not find trial counsel to be ineffective where an objection would have been meritless or futile, *id.*, nor will we second-guess matters of trial strategy or "assess counsel's competence with the benefit of hindsight[,]"*Abcumby-Blair*, 335 Mich App at 237 (cleaned up).

First, defendant argues that his trial counsel was ineffective because he was not offered his right to a public trial. Defendant had a jury trial on July 17 and 18, 2023. Defendant presents no argument, and there appears nothing from the record to show, that his jury trial was closed to the public.

Defendant further argues that his trial counsel was ineffective because he was not offered his right to a bench trial. "The Court of Appeals has consistently held that there is no constitutional right to waive a jury trial, and any right of waiver arises only by statute." *People v Kirby*, 440 Mich 485, 492; 487 NW2d 404 (1992). Defendant had no constitutional right to a bench trial, and counsel is not ineffective by failing to argue meritless positions. See *Head*, 323 Mich App at 539.

Defendant also argues that his trial counsel was ineffective because he failed to request a mental competency examination of defendant to determine if he was incompetent to stand trial. "As a general rule, a criminal defendant is presumed competent to stand trial." *People v Davis*, 310 Mich App 276, 288; 871 NW2d 392 (2015) (cleaned up). The prosecution, defense counsel, and the trial court all hold the power to raise the issue of a defendant's competency. MCL 330.2024. Defendant provides no evidence that there was any question of his competency that defense counsel was or should have been aware of.

Finally, defendant argues that his trial counsel was ineffective because he failed to request a medical examination of the victim to verify that there was no physical evidence that any penetration ever occurred. But defendant points to no authority that he had a right to require AY to submit to a medical examination. "[T]his Court will not create any additional barriers to the disclosure by children of sexual abuse by allowing court-ordered sexual-assault examinations, particularly when the Legislature has given no indication that trial courts possess such authority and . . . due process does not require it." *In re Bell*, 341 Mich App 596, 605; 991 NW2d 251 (2022).

Defendant has failed to demonstrate that trial counsel's performance fell below an objective standard of reasonableness.

Affirmed.

/s/ Stephen L. Borrello
/s/ James Robert Redford
/s/ Sima G. Patel